**\*NOR FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| REVEREND MICHELE FLYTHE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. Action No.: 16-1321 (FLW) |
| v. | : | |
| | : | |
| RALPH LAUREN, INC., *et al.*, | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, District Judge**:

In May 2014, Plaintiff Reverend Michele Fly the ("Plaintiff" or "Rev. Flythe") shopped at the Jackson Premium Outlet, where Plaintiff was allegedly falsely accused by Defendants Mydatt Services, Inc. d/b/a Valor Security Service, Inc. ("Valor"),[1] Premium Outlet Partners, LP f/k/a CPG Partners, LP ("CPG")[2] (collectively "Defendants"), and certain municipal police officers of shoplifting at a Ralph Lauren Outlet Store.[3] Based on events that transpired, Plaintiff brings the instant Amended Complaint ("Complaint") against Defendants, asserting in Count I, defamation and Count V, violation of the New Jersey Civil Rights Act ("NJCRA"). All other causes of the action asserted in the Complaint are not against CPG or Valor. Presently, Defendants separately move for dismissal of Plaintiff's Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth more fully below, both motions to dismiss by Valor and CPG are **GRANTED**.

---

[1]   Valor was incorrectly named as Jackson Premium Outlet Security.

[2]   CPG was incorrectly named as these separate entities: Simon Property Group, Inc., Simon Premium Outlets, Inc., Simon Premium Outlets Jackson, New Jersey.

[3]   No other defendants, who have been served, moved for dismissal.

1

**BACKGROUND**

The following facts are taken from the Complaint and assumed as true for the purposes of these dismissal motions. On May 6, 2014, Plaintiff, an African American, shopped at the Jackson Premium Outlet (the "Outlet") in Jackson, New Jersey. At the Polo Ralph Lauren outlet store, an unnamed store employee allegedly informed Security Officer Carmine DeLauro, an employee of Valor, a security firm, that Plaintiff was observed by employees of stealing items from the store. Compl., ¶ 5. After a brief period at the Polo store, Plaintiff drove to the area of the mall where the Chico's outlet store was located and she entered that store. According to Plaintiff, Security Officer DeLauro located her at Chico's and called the Jackson Township Police Department to inform the police that he had positively identified Rev. Flythe as a shoplifter. *Id.* at ¶ 6. Plaintiff alleges that while on the phone with police dispatch, DeLauro made disparaging, defamatory and false comments about Plaintiff, including false accusations that Plaintiff "was most likely shoplifting clothes from Chico's as well." *Id.* at ¶ 7.

The dispatch sent out a call to police officers in or around the Outlet to respond to an alleged shoplifting. Compl., ¶ 8. Plaintiff alleges that two Jackson Police Officers, Sean Greenberger and Donald Lasko, responded to the call and apprehended Plaintiff at Chico's when she was exiting a dressing room. *Id.* at ¶ 9. Plaintiff further alleges that the police officers publicly interrogated Plaintiff without reading her Miranda rights and accused her of shoplifting based on eye witnesses and her "guilty mannerisms." *Id.* at ¶ 9. According to the Complaint, the officers then detained Plaintiff, and demanded that she consent to a search of her vehicle, where the officers allegedly believed that the stolen items were placed. *Id.* at ¶ 10. Facing the accusations, Plaintiff repeatedly denied that she had shoplifted and refused to consent to the search of her vehicle. *Id.* at ¶ 11. Displeased, the police officers allegedly threatened to impound Plaintiff's vehicle if

consent was not provided and proceeded to conduct an "illegal and warrantless search of [Plaintiff's] vehicle and trunk of the vehicle." *Id.*

The search, according to Plaintiff, failed to yield any stolen items. *Id.* at ¶ 12. Subsequently, Plaintiff avers that one of the officers decided to check the surveillance video at the Polo store, while the other officer "continued to unlawfully detain [Plaintiff] at her vehicle." *Id.* Eventually, Plaintiff claims that the officer returned to the parked car and stated that "the video showed that no shoplifting occurred and that it was a false alarm." *Id.* at ¶ 13. The police officers, at that point, with no evidence of crime, left the Outlet without arresting Plaintiff. *Id.* Plaintiff complains that throughout this incident, a group of people had gathered to watch the police interrogation and search, subjecting Plaintiff to public humiliation. *Id.* at ¶ 14.

Based on these alleged events, Plaintiff initiated the instant suit against Defendants[4] and others, asserting the following Counts: (1) defamation; (2) respondeat superior; (3) violations of § 1983; (4) violations of the New Jersey Civil Rights Act ("NJCRA") and the State Constitution against the police officers Greenberger and Lasko; (5) violations of the NJCRA against Defendants; (6) violations of New Jersey's Racial Profiling Policy; and (7) false imprisonment. Of these causes of action, only Counts One (defamation) and Five (NJCRA) are asserted against Valor and CPG. In the instant matter, each of these two defendants moves to dismiss Plaintiff's claims for failure to state a claim. The Court will resolve these two motions, collectively, in this Opinion.

---

[4] While, as pled, DeLauro was an employee of Valor, Valor has not moved to dismiss on DeLauro's behalf. In fact, although DeLauor was served, no attorney has appeared to represent DeLauro, and he has not answered or otherwise moved *pro se.*

## DISCUSSION

**I.     Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement;

to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

## II.     Defamation

In Count One, Plaintiff alleges that she was defamed by Defendants using false statements to accuse Plaintiff of shoplifting, and that those defamatory statements were published to third parties. It appears that alleged defamation relates to Security Officer DeLauro's call to the Jackson Township Police reporting Plaintiff's alleged shoplifting activities. And, Plaintiff argues that Valor and CPG, as employers, are liable for DeLauro's acts. Both Valor and CPG argue that Plaintiff has failed to properly plead the elements of a defamation claim under New Jersey law, and that both defendants are protected against claims for defamation under the qualified privilege. I agree.

To begin, the elements of a defamation claim are: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *Ross v. Bd. of Educ.*, No. 15-2662, 2016 U.S. App. LEXIS 12780, at *6 (3d Cir. Jul. 12, 2016)(quoting *DeAngelis v. Hill*, 180 N.J. 1,

13 (2004)). In addition to those elements, a plaintiff must also plead damages as a result of the alleged defamation. *Peishu Zheng v. Quest Diagnostics, Inc.*, 248 Fed. Appx. 416, 418-19 (3d Cir. 2007)(citing *Feggans v. Billington*, 291 N.J. Super. 382, 390 (App. Div. 1996). Importantly, as a threshold matter, the plaintiff must identify the particular defamatory statement that the defendant made. *See Ross,* 2016 U.S. App. LEXIS 12780 at *6.

Here, Plaintiff's averments with respect to defamation fail to meet the pleading requirements. At the outset, I note that Plaintiff argues that both CPG and Valor are liable for the alleged defamatory statements made by Security Officer DeLauro. While Valor allegedly employed DeLauro, Plaintiff argues that because CPG hired both Valor and its employees to provide security services at the Outlet, DeLauro is also an agent of CPG; according to Plaintiff, as an agent, CPG is liable for DeLauro's actions.[5] Aside from the fact that Plaintiff does not allege any of the agency-related allegations in her Complaint, such as CPG employed DeLauro, Plaintiff has failed to properly plead the second element of a defamation claim against both CPG and Valor - the *unprivileged* publication of an alleged defamatory statement to a third-party.

In New Jersey, "citizens have a qualified privilege to make statements to authorities for the prevention and detection of crime." *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 136 (1986). The New Jersey Supreme Court has explained the privilege as follows:

> A communication "made bona fide upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable"; the "fundamental test is the bona fides of the communication," and it

---

[5] I note that while Plaintiff argues that DeLauro is an agent of CPG, neither party properly briefed New Jersey's agency law — including whether a principal is liable for the acts of an *independent contractor* — as it relates to the present factual circumstances. Regardless, I need not make those determinations because I find, here, that Plaintiff has failed to allege the second element of his defamation claim against both CPG and Valor.

is not privileged when the person making it has "full knowledge of its untruthfulness."

*Williams v. Bell Telephone Labs., Inc.*, 132 N.J. 109, 121 (1993)(quotations and citations omitted). Put differently, "a communication to a law enforcement officer is generally held to be qualifiedly privileged if it is made in good faith for the purpose of helping to bring a criminal to justice." *Dijkstra v. Westerink*, 168 N.J. Super 128, 135 (1979) (citing 50 Am. Jur. 2d, Libel & Slander, § 214 at 726 (1970)); *see Moreau v. Walgreen Co.*, 387 Fed. Appx. 202, 203-204 (3d Cir. 2010); *Govito v. West Jersey Health Sys., Inc.*, 332 N.J. Super. 293, 312 (App. Div. 2000). However, a plaintiff may overcome this privilege by demonstrating that the defendant abused it, i.e., that the defendant "[1] knows the statement is false or . . . acts in reckless disregard of its truth or falsity; [2] the publication serves a purpose contrary to the interests of the qualified privilege; or [3] the statement is excessively published." *Govito*, 332 N.J. Super at 312 (quotation marks and citations omitted).

Importantly, the question whether a defamatory statement is privileged is a threshold determination to be made by a judge rather than a jury. *Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, 462, *cert. denied*, 459 U.S. 999 (1982). Indeed, courts determine "whether the occasion upon which the defendant published the defamatory matter gives rise to a privilege." *Govito*, 332 N.J. Super at 310 (citing Restatement (Second) of Torts § 619(1)).

Here, assuming both CPG and Valor are liable for the statements that DeLauro made to the police, these two entities are entitled to invoke the qualified privilege. Plaintiff alleges that DeLauro made defamatory statements to the police regarding Plaintiff's alleged shoplifting activities at the Polo Store and Chico's. Specifically, Plaintiff avers that DeLauro made "false allegations that [Plaintiff] was most likely shoplifting clothes from Chico's as well." Compl. at¶ 7. First, the alleged accusatory statements were made to the police by DeLauro, a security officer,

7

for the purposes of furthering a shoplifting investigation. In fact, DeLauro was alleged to have identified Plaintiff pursuant to a tip from a Polo Store employee, who allegedly witnessed Plaintiff shoplifting. Thus, the circumstances surrounding the alleged defamatory statements made by DeLauro fall squarely within the boundaries of the qualified privilege — in that, DeLauor reported the alleged criminal activities to a law enforcement officer "for the purpose of helping to bring a criminal to justice." *Dijkstra,* 168 N.J. Super at 135.

Arguing otherwise and without citing to any authorities, Plaintiff claims that the communication made by DeLauro to the police was not *bona fide* because DeLauro made no attempt to review the surveillance video in order to verify the alleged shoplifting activities.[6] Plaintiff is incorrect. There is no requirement under the privilege that a suspecting individual must verify his/her version of the events, such as viewing a surveillance video, before reporting to the police, so long as that individual made the statement in good faith. *See Id.; Govito,* 332 N.J. Super. at 318 (finding that in determining whether qualified privilege applies, a speaker does not have a duty to investigate the truthfulness of his/her statement to a third party). Indeed, there are no allegations in the Complaint that DeLauro communicated the alleged shoplifting information to the police in bad faith. First, Plaintiff has not alleged that DeLauro knew the statements that he made were false or that he acted in reckless disregard of the truth. In fact, Plaintiff has alleged that DeLauro initiated his investigation of Plaintiff after a Polo employee informed DeLauro that Plaintiff was allegedly shoplifting — which provided DeLauro with an appropriate basis to contact the police with that information. Moreover, there is no allegation that DeLauro did not witness,

---

[6] Plaintiff incorrectly argues that DeLauro must be a police officer in order for CPG and Valor to invoke the qualified privilege. There is no such requirement under New Jersey law. *See Dairy Stores,* 104 N.J. at 136.

or reasonably believe that, Plaintiff shoplifted at Chico's, before making statements to the authorities regarding Plaintiff's purported criminal activities. Contrary to Plaintiff's arguments, there are simply no allegations of any bad faith or inappropriate behavior on the part of DeLauro that I could find to exclude the application of the qualified privilege.[7] However, should discovery reveal any facts to support bad faith, Plaintiff may move to amend her Complaint; but, until then, Count I against CPG and Valor is dismissed without prejudice.

### III.   NJCRA

In Count Five of Complaint, Plaintiff asserts a NJCRA claim against CPG and Valor. Although the allegations in Count Five are plainly conclusory, it appears that Plaintiff attempts to hold CPG and Valor liable for the individual actions of DeLauro. The gist of Plaintiff theory on this claim is that DeLauro's conduct of reporting Plaintiff's bogus criminal activities violated Plaintiff's civil rights under the NJCRA. Like his defamation claim, Plaintiff has failed to state a NJCRA claim against CPG or Valor.

N.J.S.A. 10:6-2(c) provides a private cause of action for violations of the NJCRA, and reads, in relevant part, as follows:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under

---

[7]   Lastly, Plaintiff contends that because no crimes were actually committed, DeLauro's statements were false, and that fact excludes CPG and Valor from exercising their qualified privilege. This argument is without merit; if the Court were to adopt Plaintiff's reasoning, it would defeat the very purpose of the privilege. The truthfulness of an alleged defamatory statement is not a factor in determining whether qualified privilege applies; rather, truth is entirely a separate defense to defamation which, alone, could cause a defamation claim to fail. *Minerva Marine, Inc. v. Spiliotes*, No. 02-2517, 2005 U.S. Dist. LEXIS 41854, at *28-29 (D.N.J. Apr. 4, 2005). On the other hand, if DeLauro *knew* his statements were false, that would defeat the privilege.

>color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A 10:6-2(c).

The NJCRA "was intended to provide New Jersey citizens with a state analogue to Section § 1983 actions," and in that regard, just like § 1983, a private right of action under the NJCRA requires the presence of state action. *See Marjac, L.L.C. v. Trenk*, No. 06-1440, 2009 U.S. Dist. LEXIS 59830, at *9 (D.N.J. Jul. 14, 2009) ("Plaintiffs are required to come forward with evidence that their constitutional rights, under the federal or state constitutions, have been violated as a result of some state action."), *rev'd on other grounds*, 380 Fed. Appx. 142 (3d Cir. 2010). Indeed, NJCRA is interpreted as analogous to Section 1983. *See Szemple v. Corr. Med. Servs.*, 493 Fed. Appx. 238, 241 (3d Cir. 2012); *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443 (D.N.J. 2011); *Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103, 115 (App. Div. 2011).

Here, both parties' briefings on this issue focus on disputing whether Plaintiff has sufficiently alleged that DeLauro was acting under the color of law, i.e., a state actor, when he contacted the police regarding Plaintiff's alleged shoplifting activities. Plaintiff argues that under the "joint action" test, DeLauro was acting in concert with the Jackson Township police officers, which, in turn, qualifies him as a state actor. At the outset, I am not convinced that Plaintiff has adequately satisfied the elements of the "joint action" test. But, I do not need to resolve that question, because, more fundamentally, Plaintiff cannot impute the actions of DeLauro to CPG or Valor under the NJCRA. Put differently, even if DeLauro were performing state functions, no vicarious liability can be obtained against CPG or Valor.

Indeed, there is no respondeat superior liability in § 1983 actions against a private party defendant for acts committed by its employees performing state functions. *See Weigher v. Prison*

10

*Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010) (holding that a private corporation providing medical services at a state correctional facility cannot be held liable under a theory of respondeat superior in a § 1983 suit). Rather, a plaintiff must allege that the private employer had a policy, practice, or custom which caused injury to the plaintiff. *See Adonai-Adoni v. King*, No. 07-3689, 2009 U.S. Dist. LEXIS 28141, at *2 (E.D. Pa. Mar. 31, 2009) (noting that a private medical provider can only be liable under § 1983 if claim rests "upon some policy, practice or custom"); *Carpenter v. Kloptoski*, No. 1:08-CV-2233, 2010 U.S. Dist. LEXIS 22262, at *8 (M.D. Pa. Mar. 10, 2010) (concluding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal); *Heslop v. N.J. Dep't of Corr.*, No. 16-4143, 2016 U.S. Dist. LEXIS 112872, at *4-6 (D.N.J. Aug. 24, 2016)(same). In this case, because Plaintiff relies entirely on CPG's or Valor's status as an employer to establish liability under the NJCRA, the Complaint is devoid of any factual allegations that these entities violated Plaintiff's rights through their own conduct. Without more, the Complaint fails to allege sufficient facts for the Court to infer civil rights liability upon CPG or Valor. Accordingly, Count Five is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by CPG and Valor are **GRANTED**. Accordingly, Counts One and Five are dismissed without prejudice.

DATED: November 17, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge